JOHN J. O'BRIEN, Respondent, v. ST. LOUIS DRAYAGE COMPANY, Appellant.

St. Louis Court of Appeals, December 18, 1894.

Master and Servant: DEFECTIVE APPLIANCES: INSTRUCTIONS. An instruction in this action, which was brought by a servant against his master for a personal injury, is held to be erroneous, in that it authorized a recovery for the existence of an imperfection in an appliance at the time of the injury, when the right of recovery was dependent upon the existence of the imperfection at the time when the appliance was furnished.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Henry B. Davis* for appellant.

*Virgil Rule* for respondent.

BOND, J.—This action is brought by the plaintiff against the defendant for injuries sustained by reason of the alleged negligence of defendant in failing to provide a key to hold in position the kingbolt of a wagon, which plaintiff was employed to drive by defendant. The answer was a general denial and a plea of contributory negligence. On the trial it appeared in evidence that the plaintiff was employed as teamster by the defendant in January, 1893; that he had been engaged in the business as teamster for fifteen or twenty years; that the wagon which defend-

ant provided at the time plaintiff was employed broke down, whereupon plaintiff went over to the lot where defendant's wagons were kept for the purpose of getting another one; that when he arrived at the lot the foreman was absent, but that a man named Dyer, who was also a driver for the defendant company and watched around the stables when no one else was there, asked the plaintiff which of the wagons he would take from the lot; that plaintiff replied that he did not know, whereupon Dyer told him to go down to the lot and take any of them; that plaintiff then selected a wagon and asked Dyer if he should take it, and Dyer told him yes; that plaintiff asked Dyer about the wagon which he selected, because he did not want to take the one which Dyer drove; that all this occurred on Friday, in the evening; that plaintiff at once proceeded with two other drivers to load his wagon with portions of a car load of coffee, which plaintiff took to the defendant's warehouse on the same evening, as it was too late to deliver on that day, and delivered it next morning; that he then came to the bridge and was instructed to get a load and take it to East St. Louis, which was done; that he next, by order of the superintendent, got a load of iron at one of the railroad depots and delivered that, and afterwards was sent to carry another load of dried apples; that this consumed most of Saturday, and, lastly, that in connection with the superintendent he took his wagon to the station of another railroad and loaded it with a machine and other articles; that these two accomplished the loading by putting on the smaller pieces first, and afterwards placing the machine on the wagon by raising it over the hind axles; that, it being late on Saturday evening, plaintiff took his wagon thus loaded to the warehouse of the company, and left it there until the following Monday morning, when he

carried it to the store of the consignee, the Ringen Stove Company, and, after taking out the other articles, the superintendent of the consignee directed the plaintiff to turn his wagon around and back it in so as to take the machine off at the rear end; that the plaintiff turned his wagon in the position suggested, and, while walking towards the rear end, the body of the wagon flew up, the machine slid out, and injured one of the hands of plaintiff severely, the bone of one finger being broken, and another crushed; that, when the wagon bed flew up, it was observed that the kingbolt which connects the wagon bed with the front axle did not have any key; and that there was a place in the end of the kingbolt for putting a key.

The evidence shows that on the preceeding Friday, when plaintiff procured the wagon in question in East St. Louis, he did not examine to see whether the kingbolt was provided with a key or not. Plaintiff's testimony is that he could have ascertained by stooping down and looking under the wagon. There was no evidence tending to show that any examination was made under the wagon at the time of the accident to ascertain whether or not the key had slipped out of the kingbolt, nor was there any evidence to show whether a key had been provided for the kingbolt of this wagon at any time, or whether, if one had been provided, it had slipped out in the use of the wagon for hauling purposes. The jury returned a verdict for plaintiff for $1,200, from which the present appeal is taken.

In the view we take of this case, it is only necessary to notice the point made by appellant as to the correctness of the following instruction, given by the court of its own motion:

"If you believe from the evidence that, at the time of the alleged injury to the plaintiff, he was in the employ of the defendant, and that the defendant fur-

nished him the wagon in question for use in its service, and if you further find from the evidence that, in order to render the wagon reasonably safe, it was necessary that there should have been a key to the kingbolt and that, in fact, there was no such key; and if you further find from the evidence that the accident which resulted in the plaintiff's injury was caused by the fact that there was no key to the kingbolt, and that that fact was either known to the defendant or by the exercise of ordinary care might have been discovered by the defendant, and that the plaintiff was himself at the time he received the injuries complained of exercising such care as a man of ordinary prudence engaged in that kind of business would have exercised, then your verdict should be for the plaintiff.''

Appellant objects to the foregoing instruction on the ground that it assumes, because no key to the kingbolt was found at the time of the accident, the wagon did not have one when plaintiff took it. This is a misconception of the language of the instruction *supra*. The instruction does not assume that there was or was not a key to the kingbolt at any time. The mischief of the instruction is that it wholly failed to tell the jury that it was necessary for them to find that there was no key to the kingbolt *at the time* plaintiff procured the wagon, but only told them they must find "that there should have been a key to the kingbolt, and that, in fact, there was no such key.'' Under this direction the jury might have returned a verdict in favor of plaintiff upon a mere finding, that there was no key to the kingbolt *at the time* of the accident, although they might have found that a key was attached to the kingbolt at the time plaintiff received the wagon. Such a conclusion would be wholly unwarranted by any rule of law, for it is clear that, if a key was in the kingbolt at the time the wagon was taken by plaintiff, it

could not have been the duty of the defendants to maintain a continuous inspection and examination of the wagon thereafter to discover whether or not the key had worked or dropped out in the course of its use. As plaintiff's own evidence was a complete blank as to whether there was a key in the wagon at the time he took it from the yards in East St. Louis, the only proof that the key was not then in the kingbolt rested on inference, if such inference be permissible. If the jury were warranted in drawing this inference, they might, with equal logic, have inferred under the facts shown in this record that there was a key in the kingbolt at the time plaintiff took charge of the wagon in East St. Louis, and that the continuous use of the wagon thereafter for several days before the accident resulted in its loss.

The error of the instruction *supra* is, therefore, that it might have authorized a verdict for plaintiff, if the jury had found according to the latter hypothesis.

Our conclusion is, that the ambiguity of the foregoing instruction in failing to tell the jury whether they should find the absence of the key *at the time* the wagon was received by plaintiff, or *when* the accident occurred, was necessarily confusing, and tended to mislead the triers of the fact on a pivotal point in the case. The result is that we are constrained to reverse the judgment and remand the cause. Judge ROMBAUER concurs. Judge BIGGS is absent.